HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LEONARD KERR,

        Plaintiff,

   v.

STURTZ FINISHES, INC., et al.,

        Defendant.

CASE NO. C09-1135RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on Defendants' motion for summary judgment. Dkt. # 17. No party requested oral argument, and the court finds this matter suitable for disposition without oral argument. For the reasons stated below, the court GRANTS the motion.

## II. BACKGROUND

Leonard Kerr worked at Defendant Sturtz Finishes, Inc. ("Sturtz") as a painter from February 2007 to August 2008. He typically worked as a lead for a crew of several painters, and he was required to ensure, among other things, that each crew had the supplies it needed for each painting job. Sturtz is located in Bellingham, but the jobs its painters performed were scattered across northwest Washington. Most of Mr. Kerr's work took place at various job sites away from Bellingham.

ORDER – 1

1    Mr. Kerr contends that Sturtz required him to use his personal truck to transport
2    Sturtz tools and equipment. Kerr Decl. (Dkt. # 21-1) ¶ 3. On some workdays, Mr. Kerr
3    drove directly from his home to the job site, and returned home directly from the jobsite.
4    On other days, he was required to either stop either at Sturtz's Bellingham office or at
5    paint supply stores during his drive home or drive to work. *Id.* ¶¶ 4-5. On some days,
6    Sturtz required him to drive other employees from their homes to the jobsite, or to their
7    homes after work ended. *Id.* ¶ 7. On other occasions, he drove his truck to Sturtz's
8    offices and then was required to drive a company vehicle for the remainder of the day.
9    *Id.* ¶ 8. Mr. Kerr often received phone calls from Sturtz before or after work regarding
10   work assignments. *Id.* ¶ 10. He also occasionally sent e-mail or called Sturtz outside of
11   work hours to report the hours he had worked that day. *Id.* Sturtz contests some of Mr.
12   Kerr's assertions. It asserts, for example, that Mr. Kerr could have stored all tools in on-
13   site storage units that Sturtz provided, and that it did not "require" Mr. Kerr to do
14   anything with respect to his commute. The court has resolved all such disputes in Mr.
15   Kerr's favor.

16   Mr. Kerr contends that he was underpaid, and has invoked both the Federal Labor
17   Standards Act ("FLSA") (29 U.S.C. §§ 201-219) and Washington's Minimum Wage Act
18   ("MWA") (RCW Ch. 49.46). He alleges that Sturtz never compensated him for time
19   driving his truck. In this motion, however, Sturtz targets only one category of drive time.
20   It contends that Mr. Kerr is not entitled, as a matter of law, to compensation for time he
21   spent driving directly from his home to the jobsite, or for time he spent driving directly
22   from the jobsite back to his home (hereinafter "direct commuting time"). The court's
23   focus on direct commuting time is deliberate. There are disputes about time Mr. Kerr
24   spent driving between job sites and the Sturtz office, between job sites and painting
25   supply stores, between job sites and the homes of employees that Sturtz required him to
26   transport, drive time in a van that Sturtz provided, and occasions on which Mr. Kerr was
27   required to haul a Sturtz trailer. This order reaches none of those disputes.
28   ORDER – 2

## III.  ANALYSIS

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party must initially show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opposing party must present probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  The court defers to neither party in resolving purely legal questions. *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

### A.  Federal Wage-and-Hour Law

FLSA, enacted in 1938, has been the subject of two amendments affecting the compensability of driving time.  In 1947, Congress passed the Portal-to-Portal Act, excluding certain preliminary and postliminary activities from the scope of FLSA. *Reich v. New York City Transit Auth.*, 45 F.3d 646, 648-49 (2d Cir. 1995) (summarizing legislative history).  Congress amended the Portal-to-Portal Act in 1996 with the Employment Commuter Flexibility Act ("EFCA"), which further clarified whether commuting time is compensable. *Rutti v. Lojack Corp.*, 596 F.3d 1046, 1051-52 (9th Cir. 2010) (reviewing legislative history).  EFCA declares that "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which [an] employee is required to perform" is not compensable.  29 U.S.C. § 254(a)(1).

In *Rutti*, the Ninth Circuit interpreted EFCA to make most direct commuting time noncompensable.  In that case, the employer not only required employees to drive company vehicles when commuting to and from work, but prohibited employees from

ORDER – 3

using the vehicles for any other purpose. *Rutti*, 596 F.3d at 1049, 1053. Employees were often "on call" during hours they were not otherwise working. *Id.* at 1049. Each day, the plaintiff in *Rutti* spent time in the morning receiving communications about the day's work and mapping driving routes accordingly. *Id. Rutti* dictates that Mr. Kerr's direct commuting time is not compensable. He has alleged, in essence, that Sturtz converted his personal truck into a company vehicle. Accepting the truth of all the statements in his declaration, however, it is plain that Sturtz exercised much less control over his commuting than did the employer in *Rutti*. Mr. Kerr was not subject to restrictions on his personal use of his truck, and although he received calls from his employer, he was not "on call" like the plaintiff in *Rutti*. Like Mr. Kerr, the plaintiff in *Rutti* had to report hours worked and to plan his daily routes before or after his commute began or ended. This was nonetheless insufficient to transform his drive time into compensable work time.

The only distinction Mr. Kerr articulates between himself and the *Rutti* plaintiff is that he was required to haul Sturtz's tools and equipment. Regulations implementing FLSA note that in certain circumstances, employees forced to carry their employer's equipment are entitled to compensation:

> An employee who walks, rides, or otherwise travels while performing active duties is not engaged in the activities described in [29 U.S.C. § 254(a)]. An illustration of such travel would be the carrying by a logger of a portable power saw or other heavy equipment (as distinguished from ordinary hand tools) on his trip into the woods to the cutting area. In such a situation, the walking, riding, or traveling is not segreable from the simultaneous performance of his assigned work (the carrying of equipment, etc.) and it does not constitute travel "to and from the actual place of performance" of the principal activities he is employed to perform.

29 C.F.R. § 790.7(d).

So far as the court is aware, no court within the Ninth Circuit has interpreted this regulation. It has received more attention from federal courts to the east. In *Dooley v.*

ORDER – 4


*Liberty Mutual Ins. Co.*, 307 F. Supp. 2d 234, 247 (D. Mass. 2004), the court concluded that an insurance company's appraisers were not entitled to compensation for commutes in which they were required to carry "light" equipment that "fit[] into a large briefcase." In reaching that ruling, the court examined numerous decisions from other courts regarding the dividing line between "heavy equipment" whose transport makes a commute compensable, and lighter equipment whose transport is not compensable. *Id.* at 245-49.

None of these cases bear directly on Mr. Kerr's commute. The vast majority of the equipment he carried was light. Kerr Decl. ¶ 3 (listing drop cloths, buckets, brushes, sanders, and other handheld painting supplies). The largest pieces of equipment were ladders ranging from 16 to 40 feet. Individually, each of these pieces is "light," collectively, they are no doubt unwieldy. The best indication in the regulation of a line between "heavy" and "light" equipment is that a "portable power saw" is heavy whereas "ordinary hand tools" are light. 29 C.F.R. § 790.7(d). The court notes, however, that the regulation drawing this line is at least half a century old, and that the weight of a "portable power saw" has no doubt changed substantially over that time. *D A & S Oil Well Servicing, Inc. v. Mitchell*, 262 F.2d 552, 555 n.5 (citing identical regulation).

The court rules that the equipment Mr. Kerr transported does not transform his direct commuting time into compensable time. Critical to the court's conclusion is that there is no evidence that the equipment Mr. Kerr carried transformed the nature of his commute. There is no evidence, for example, that his commute with a fully laden truck was any different than a commute in an empty truck. He was not required to do anything with the equipment he carried once he left his job for the day. At best, he contends that he would "bring tools and equipment that might be damaged by rain" into his home at night, and that he would "lock up any valuable tools or equipment in [his] personal shop overnight if they did not fit in the locked tool box or cab of the truck." Kerr Decl. ¶ 3. There is no indication that this was required of him, and no evidence that he did so

ORDER – 5

frequently, or that the work required more than trivial time or effort.  The court finds that federal wage-and-hour law does not require compensation for such commutes.

**B.     Washington Wage-and-Hour Law**

When interpreting the MWA, Washington courts look to FLSA and federal regulations implementing it.  *Inniss v. Tandy Corp.*, 7 P.3d 807, 811 (Wash. 2000).  Washington has not, however, adopted the Portal to Portal Act or EFCA.  *See Anderson v. Dep't of Social & Health Servs.*, 63 P.3d 134, 457 (Wash. Ct. App. 2003).  So far as the court is aware, no provision of Washington's statutes or regulations is more specific than WAC § 296-126-002(8), which defines "hours worked" as "all hours during which the employee is authorized or required by the employer to be on duty on the employer's premises or at a prescribed work place."  *See Stevens v. Brink's Home Security, Inc.*, 169 P.3d 473 (Wash. 2007) ("The [Washington] legislature has not defined hours worked or addressed the compensability of employee travel time.").

In *Stevens* the court held that direct commuting time for home security technicians driving employer-provided vehicles was "hours worked" within the meaning of the MWA.  The employer "strictly control[led] the drive time, prevent[ed] Technicians from using the trucks for personal business, and requir[ed] Technicians to remain available to assist at other jobsites while en route to and from their homes."  *Id.* at 476-77.  In addition, employees spent time before their commutes began receiving electronic information from the employer and planning their day's route.  *Id.* at 476.  The court also held that because the technicians visited their employer's office only once each week, were required to maintain the interior and exterior of their vehicle in compliance with company guidelines, and were required to complete work either in the company vehicle or at home, the vehicle served as the "prescribed work place."  *Id.* at 477.  Technicians had to carry "tools and equipment necessary for servicing and installing home alarm systems."  *Id.*

ORDER – 6

The court finds this case distinguishable from *Stevens*. The court accepts, for purposes of resolving this motion, that Sturtz effectively converted Mr. Kerr's truck into a Sturtz vehicle. In addition, there is no material distinction between the tools Mr. Kerr carried and those that the technicians carried in *Stevens*. If anything, it appears that Mr. Kerr carried more equipment for his employer. Even so, Sturtz did not exercise nearly as much control over Mr. Kerr's commuting time and his vehicle as the employer in *Stevens*. Unlike the technicians in *Stevens*, Mr. Kerr was free to put his vehicle to personal use before and after his work day was complete, and he was not "on call" for other Sturtz work. *Id.* at 476. He did communicate with his employer about work assignments, but this is distinguishably different between the communication and route planning the technicians in *Stevens* were required to engage in to coordinate travel to multiple service locations during the day. *Id.* (describing route planning). Unlike in *Stevens*, there was no work that Mr. Kerr was required to complete in his truck, no employer-imposed restrictions on the condition of his truck, and he admittedly made frequent visits to the Sturtz office. Under these circumstances, Mr. Kerr's truck was not his "prescribed work place," and his direct commuting time is not compensable under the MWA.

## IV.  CONCLUSION

For the reasons stated above, the court GRANTS Defendants' motion for summary judgment. Dkt. # 17. The court holds that Mr. Kerr's direct commute time, as defined above, is not compensable under FLSA or the MWA. This order resolves no other issue.

DATED this 12th day of August, 2010.

_____
The Honorable Richard A. Jones
United States District Judge

ORDER – 7